TALIAFERRO, Judge.
Plaintiff, the lessee of the defendant, instituted this suit against him to recover damages for physical injuries allegedly resulting from a portion of the porch of the leased premises, because of its decayed condition, suddenly giving way beneath her weight.
' The alleged accident occurred about 5:00 o’clock P.M. on May 11, 1948. The leased premises is municipal number 1715 Sycamore Street • in the City of Shreveport, Louisiana. Plaintiff had occupied the premises as lessee for some fifteen years.
Plaintiff alleged that as she stepped upon the porch from her bedroom, intending to gather some clothes on a line strung along porch posts, a portion of the floor under her right foot gave way and sank; that she lost balance and fell to her right, striking a large chair with the right pelvic bone and right side of the abdomen; that her right foot was caught in the opening caused by the sinking floor and was extricated with great difficulty. She charges that the accident was due solely to the fault and negligence of her landlord in permitting the floor to become and remain so weak and defective that it amounted to a hazard to those who would walk upon it, although the defect was not observable to such persons. She specifically charges that, in the accident she sustained a post-operative hernia in the lower central abdominal region; injury to her internal organs in the vicinity of the lower abdomen, resulting in constant pain and suffering; .particularly did she suffer severe and serious injury to her tubes, ovaries, uterus, and tó the muscular structure in this area of her body. As the ultimate result of said injuries, she claims to be permanently and totally disabled.
*438 In supplemental petition, filed five weeks after the original petition was filed, plaintiff alleged as additional injury from the accident a fracture of the coccyx one-half inch below its union with the sacrum.
Defendant’s answer is in effect a general denial. It is expressly pleaded, however, that the porch floor was free of defects and vices; but, if this be not true, then plaintiff’s own negligence in going upon the unsafe floor, knowing same to be unsafe, for her weight, was the proximate cause of the accident; and, in the alternative, this negligence on her part is urged in bar of plaintiff’s right to recover.
There was judgment for the plaintiff in the sum of $2,710.00 and defendant appealed.
Plaintiff’s action is based upon Article 2695 of the Civil Code, which with some deletions, reads: “The lessor guarantees the lessee against all the vices and defects of the thing * * * even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since * * * and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
Articles 2322 and 2693 deal with the same subject.
Defendant, throughout the case, has taken the position that the accident alleged upon did not occur; and that if plaintiff suffers from the character of injuries she claims, that these are due to the effect of being violently shoved or knocked from the porch by her own son, some six weeks prior, while the two were in a row and she or both of them were in a state of intoxication.
Whether or not this incident occurred, it is not necessary to determine, but, in passing, it may be said that there is positive testimony of neighbors to support the affirmative of it.
We are convinced that the floor for an area of practically two feet square did give way at one end while plaintiff was standing with right foot upon it, and that her right leg, to an undetermined extent suddenly descended into the hole, causing hei to lose balance and fall or squat down.
It appears that some time prior to this accident, no effort being made to establish the exact date, this very portion of the porch floor attained a condition of decay that necessitated the removal of portions of some seven boards which were replaced by new and short ones. These short boards extended from the edge of the porch back some two feet to the second sleeper. To provide a base upon which the new boards could rest, a board was nailed to the outside of said sleeper, flush with its top. This enabled the workmen to place the ends of the new boards against the ends of the old ones and thereby completely cover the hole. The board nailed to the sleeper, from decay or lack of adequate nailing, or both, pulled loose therefrom and the ends of the above mentioned short boards dropped down, presumably to the ground, while the other ends, to some extent, at least, remained attached to the outer sleeper. This is made very clear from testimony and pictures in the record. Plaintiff’s right foot, naturally, was projected into the opening at the ends of the disengaged boards. It does not appear that the boards themselves to any extent broke or gave way beyond what we have said above.
The exact character and extent of injuries experienced by the plaintiff are seriously controverted questions, and the testimony submitted to establish the same is far from conclusive. She alleged and testified that her right pelvic bone struck a heavy wicker chair when she fell, but the location of the chair and her description of the fall, coupled with what would be the expected movements of the body, out of balance under such circumstances, argue against what she says on the subject. She says that when taken from the hole and carried into her bedroom she was bleeding profusely from her female organs, but her own witnesses, including a son-in-law, positively dispute this fact and go further by saying that they saw no evidence whatever of blood except from scratches on and about her right ankle.
She also testified that her son-in-law summoned a physician immediately after *439 the accident, but he denies that he did so. The testimony on this score makes it clear that no doctor was summoned to examine and treat her. If such had been done, surely he would have been called as a witness on her behalf. She did go to a Charity Hospital in said city on May 13th following '.the accident.
'It so happened that in the year 1925 plaintiff underwent an operation in which most, if not all, of the female organs were removed. This operation left pronounced scar tissue from the umbilicus to the upper margin of the symphisis pubis. At the lower end of this scar tissue appears what some doctors denominate a hernia. It is a limited bulging of the flesh. The majority ■of the physicians are of the opinion that this abnormality arose in the process of Tiealing, possibly from a suture there giving way, and they discount the suggestion that it occurred or could have, from the twisting of the body in the accident. They refer to it as being a weak spot in the abdominal wall.
The testimony concerning the fracture of the coccyx is equally inconclusive. Dr. Cassity is quite certain that from physical examination he found a well defined fracture of this bone about one-half inch below its articulation with the sacrum, but would not venture opinion as to its age. However, several X-ray pictures are negative as to fracture or dislocation. It is shown that childbirth does often cause injury to .and deformity of this bone from which pain of the character of which complained by plaintiff originates. She has given birth to twelve children.
It is also shown that simultaneous with a fracture of the coccyx intense pain arises and persists. It is interesting to note that when plaintiff was carried to the hospital, she did not then complain of pain in the coccyx. The records of the hospital are wholly silent on the subject. Surely, had the coccyx been bothering her at the time she would have imparted the fact to someone at the hospital and due examination been made to determine the cause, and report thereon rendered. The hospital diagnosis was incisional ventral hernia and diabetes mellitus of twelve or fifteen years standing, although the patient has not been on insulin. She was discharged from the hospital, after being therein five days, with this record note:
“Patient, no longer having symptoms Regulated diabetic state.”
It will be noted that the ankle’s condition was not so serious as to warrant comment or record.
At the time of the accident, plaintiff was seventy-three years old and weighed not over one hundred sixty (.160) pounds. Her general health was not of the best. Many times theretofore she was a patient in hospitals. She now claims that she is in bed half the time, and unable to do any work about the home. At the date of trial she was still living in the house, with a grown unmarried son, and it is not shown that she was forced, from physical disability, to hire help. It is shown that she moves about the premises practically as well as she did prior to the accident and has been seen more than once afoot five or six blocks away.
It is difficult to conceive that plaintiff’s leg could have descended the length testified to and there not have been scratches and/or bruises above the ankle, yet there were none. It is evident that the ankle was not jammed between any two objects or else its condition would have been very much worse than to have had some slight scratches thereon. When her weight shoved the boards down to an angle of forty-five degrees or about, the foot possibly slipped below the ends of the boards and this caused the ankle scratches. One witness who assisted in extricating her, stated that he had to press one foot on the inclining boards in order to bring the body to an erect position.
There are many circumstances in the case that discount plaintiff’s professions of continuous serious pain and impaired ability to carry on her customary household work. It is obvious to us that she is greatly magnifying these conditions. Such is often too true in cases of this character where the owner is at a disadvantage to meet *440 what the injured tenant has to say on the subject. ■ . .
It is difficult to understand why one of plaintiff’s daughters, who claimed she was in the house when the accident occurred, testified, and repeated it, that- it was her mother’s left foot that went into the hole.
Of course, in view of plaintiff’s age and general physical condition, we do not doubt that she was badly jarred from suddenly falling to the floor and possibly sideswiping the chair as she went down, but we are’ not at all convinced that the inci-sional hernia and the injury of the coccyx, if such existed, should be accredited, in whole, and perhaps not in part, to the accident. The most favorable view to take of these matters, so far as concerns plaintiff, is that the accident may have mildly aggravated the pre-existing conditions.
There is no merit in the plea of contributory negligence. The floor’s surface appearance to no extent reflected the weakened basic condition due, no doubt, to decay. Plaintiff had been walking upon the por.ch for many years. It was not her duty to have inspected foundation timbers to determine if it was safe to do so. This duty rested upon defendant. The law is unequivocal on the point. The owner is required at his own financial risk and peril for not doing so, to see to it that the leased premises is safe for the use for which it is rented.
Plaintiff has incurred medical and other expenses to the amount of $110.00. A review of the recent jurisprudence having to do with cases of this character leads us to the conclusion that an award for physical injury and pain in the sum of Seven Hundred Fifty and no/100 ($750.00) Dollars will do substantial justice in the case.
The lower court gave no written reasons for its award in damages. Undoubtedly, it found that there was an accident due to the floor giving way.
For the reasons herein assigned, the judgment from which appealed, is amended by reducing the amount thereof to Eight Hundred Sixty and no/100 ($860.00) Dollars, and, as thus amended, it is affirmed with costs.